UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.: 3:17cr39/MCR/MAL
                                                  3:20cv5424/MCR/MAL

MARK JOSHUA MITCHELL

---

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Mark Joshua Mitchell's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Doc. 100. The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

After careful consideration of the motion, the record, the relevant law, the Government's response (Doc. 103), and Defendant's reply (Doc. 104) the undersigned recommends the motion be DENIED without an evidentiary hearing. *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases. Grounds One and Four of Mitchell's motion, in which he contends the

district court erred in its sentencing decision, are procedurally defaulted because he failed to raise these claims on direct appeal. Grounds Two and Three, Mitchell's claims of ineffective assistance of counsel, fail on their merits because he has not met the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A. The Charges and the Plea

On April 18, 2017, a grand jury charged Mitchell with seven counts of interstate transportation of stolen property in violation of Title 18, United States Code, Section 2314. Doc. 1. Each count involved jewelry or diamonds valued at over $5,000.00.

On June 22, 2017, Mitchell, represented by appointed counsel Donald Sheehan, entered guilty pleas as charged before U.S. Magistrate Judge Charles Kahn. Docs. 25-30. The factual basis for the guilty pleas reflects that between June of 2015 and June of 2016, jewelry was stolen from six Florida residences. Doc. 27. Mitchell knowingly shipped the stolen jewelry, or diamonds that had been removed from stolen jewelry, across state lines to Missouri six times, and on one occasion he transported stolen jewelry to Louisiana. Each time, the diamonds or jewelry Mitchell transported or

caused to be transported had a value greater than $5000.00. The factual basis neither attributed the burglaries to Mitchell, nor ruled him out as a suspect; the Government was only required to prove Mitchell knew the property had been stolen when he transported it across state lines. *See* Doc. 27 at 5.

The undersigned notes that during his change of plea proceeding, Mitchell told the court he had broken the upper tibial plateau of his left leg in April of 2015, and after surgery "it took about a year to recover weight-bearing." Doc. 86 at 6. This is significant because this injury figures prominently in the claims in the instant motion.

### B. Mitchell's Sentence

According to the Presentence Investigation Report ("PSR"), Mitchell's total offense level was 19. Doc. 45. The starting point was a base offense level of 6 under U.S.S.G. § 2B1.1. PSR ¶ 44. The PSR assessed a 14-level increase pursuant to § 2B1.1(b)(1)(H) based on a loss greater than $550,000 but less than $1,500,000, and it included another two-level increase pursuant to U.S.S.G. § 2B1.1(b)(4) because Mitchell was in the business of receiving and selling stolen property, an adjustment the court later referred to as the "fence" adjustment. PSR ¶¶ 45, 46. Mitchell also received a three-level downward adjustment for acceptance of responsibility.

PSR ¶ 52, 53. Mitchell had 18 criminal history points, mainly due to 37 prior burglary convictions, which established a criminal history category of VI. PSR ¶ 75; Doc. 90 at 48. The applicable guidelines imprisonment range based on these calculations was 63 to 78 months, and the statutory maximum term of imprisonment on each count was 10 years. PSR ¶¶ 121, 122.

The PSR also included a reference to the knee injury Mitchell mentioned at his change of plea hearing. *See* PSR ¶ 96. Mitchell reported to the Probation Officer that he was "homebound" for four months after knee surgery on April 14, 2015, and he was unable to walk on crutches until February of 2016. *Id.* He stated he "wanted the record to reflect that he was unable to do anything, including commit criminal conduct, during the time he was recovering from this surgery." *Id.*

Mitchell's sentencing took place in two parts. At the April 9, 2018, hearing, Mitchell lodged several objections. First, he objected to the application of the two-level "fence" adjustment under U.S.S.G. § 2B1.1(b)(4). Doc. 89 at 4. The court sustained Mitchell's objection, noting "the Eleventh Circuit has made clear its position that one who simply … steals the property and then sells it himself is not a fence or in the business of receiving and selling stolen property … it's not enough for him to be

simply a thief." *Id.* at 5-6. Implicit in the court's ruling was a determination that Mitchell, rather than a third party, was responsible for the burglaries. The Government argued that the court should consider Mitchell's commission of those burglaries as relevant conduct in fashioning an appropriate sentence. *Id.* at 57.

Mitchell also objected to the amount of loss attributed to him. Doc. 89 at 3-4. Although the Government conceded Mitchell should receive a 12, rather than 14-level adjustment, defense counsel argued the loss amount was under $250,000, which would have been a 10-level adjustment. *Id.*

Finally, defense counsel objected to the court's consideration of Mitchell's involvement with the six burglaries from which the stolen property was obtained or three other burglaries the State had charged Mitchell with committing. Defense counsel argued the burglaries were unrelated to the counts in the federal indictment, whereas the Government argued the court could consider these burglaries under 18 U.S.C. § 3553(a). *See* Doc. 89 at 27, 57. The Government also argued the burglaries were relevant conduct because just prior to the hearing, and unbeknownst to defense counsel, Mitchell submitted a letter to the court in which he claimed

he was not involved in any burglaries.[1] *See id.* at 27. The court overruled the objection and allowed testimony about the pending burglaries, finding that "the law places no limitations" on what the court can consider for sentencing. *Id.* at 27-28.

After hearing testimony about the amount of loss, the court continued the hearing to allow one of the victims to provide an appraisal for one of the stolen diamonds, and to allow the parties to brief the issue of relevant conduct. *See* Doc. 89 at 49-58. Specifically, the court solicited additional argument regarding the parties' positions on its consideration of evidence related to Mitchell's commission of the six burglaries involving the stolen items charged in this case, as well as additional pending State burglary charges identified in the PSR (*see* Doc. 45, PSR ¶¶ 78, 79, 81[2]).

---

[1] In Mitchell's letter, he states he had been committed to a crime-free lifestyle until "economic disaster" struck after his knee injury. Doc. 60-7 at 1 (letter attached to Government's sentencing memorandum). He does not further explain how the knee injury impacted him. *Id.* Mitchell admits there is no excuse for his conduct, "[o]nly cause and effect." *Id.* He asserts both that he was not "in the business of selling stolen property" and that he "did not burglarize any property." *Id.* at 2. In counsel's affidavit in response to the § 2255 motion, counsel described this letter, which Mitchell never told him about, as an example of how Mitchell "became his own worst enemy" and possibly jeopardized his acceptance of responsibility adjustment. Doc. 103-1 at 2.

[2] The burglary described in Paragraph 80 of the PSR related to Counts Six and Seven in this case. *See* Doc. 90 at 13. It was the burglary identified in PSR ¶ 79, where Mitchell was observed on camera inside the residence, that led to his arrest.

On June 4, 2018, the court resumed the sentencing hearing, aided by the parties' supplemental sentencing memoranda. Docs. 60-62, 90. The revised loss amount was only $272,577. Doc. 90 at 10, 12. Thus, the court reduced the 14-level adjustment under § 2B1.1(b)(1) to 12. This reduction, along with the omission of the "fence" adjustment[3], resulted in a revised total offense level of 15, yielding an advisory guidelines range of 41 to 51 months' imprisonment for each count. *Id.* at 27.

The Government urged the court to impose consecutive sentences, which would allow the court to exceed the ten-year statutory maximum sentence. It supported its position by arguing Mitchell had indeed committed the burglaries and they should be considered relevant conduct. In its sentencing memorandum, it compared the dates of the six burglaries with the dates the stolen property was transported and argued that this information along with evidence of Mitchell's repeated shipments to the same jeweler, justified consideration of the underlying burglaries as relevant conduct for guidelines purposes and in conjunction with the sentencing factors in Title

---

[3] When the Defendant later objected to the court's consideration of the burglaries, the court admonished that the defense could not "have it both ways," by arguing Defendant was neither a "fence" dealing in stolen property, nor a burglar merely selling what he had stolen. Doc. 90 at 15.

Page 7 of 30

18, United States Code, Section 3553(a). *See* Doc. 60. The Government also contrasted Mitchell's assertion in his letter to the court that he "did <u>not</u> burglarize any property" (*see* Doc. 60-7 at 2; Doc. 90 at 34) with photographs of Mitchell inside a home when a burglary was committed and his presence in the vicinity of two other burglaries. Doc. 60 at 7-9.[4]

Defense counsel, on the other hand, characterized the Government's request for consecutive sentences as "harsh and unnecessary" and urged the court to impose a guidelines sentence. Doc. 90 at 11, 33. The court again indicated its intent to consider as part of Mitchell's sentence that he had committed not only the burglaries related to this case but also three others, over Defendant's objection. *Id.* at 12-14. The court noted the burglaries were committed within a close period of time in the same general geographic area, the burglaries shared similar features, and Mitchell had been emailing an out-of-state jeweler about selling and shipping diamonds within the same time frame. *Id.* at 14, 19-24. It rejected the defense suggestion that given the lack of physical evidence implicating Mitchell, there may have been an

---

[4] At sentencing, defense counsel attempted to explain Mitchell's statement by saying it referred to the burglaries related to the charges in this case and it "wasn't that universally he didn't commit any other burglary." Doc. 90 at 34.

accomplice who committed the burglaries and found that a preponderance of the evidence established Mitchell was involved.

During Mitchell's allocution, he admitted having sold the stolen property and alluded to an "alternate narrative." Doc. 90 at 35-36, 38. He declined to elaborate on what he meant, even after the court advised him that he could take the stand and present a response to an issue that would impact his sentence "in a significant way." *Id.* at 36. The undersigned notes that in his remarks to the sentencing court, Mitchell never mentioned his knee injury or the purported impact this had on his ability to engage in criminal conduct, the argument he now claims defense counsel should have raised.

The court sentenced Mitchell to a total term of 240 months' imprisonment. In doing so, it directed 60 months of the sentence to run concurrently to any future state court sentence for the related burglaries. Doc. 90 at 50-51. This sentence was a significant variance from the advisory guidelines range. It reflected, among other things, Mitchell's extensive criminal history and the fact that prior lengthy terms of incarceration had not served as a deterrent, as well as the severe impact the crime had on the victims in this case, as set forth in the victim impact statements. *See* Doc. 66 at 5 (Statement of Reasons); Docs. 40-1, 40-2 (Victim Impact Statements).

The court also explained two alternative sentences in the event of unfavorable review on appeal. First, it stated if the Eleventh Circuit found it had erred in its finding that Mitchell committed the nine burglaries, it would impose an above-guidelines 120-month sentence based on Mitchell's "undisputed, horrific criminal history." Doc. 90 at 51. Second, the court explained that if the appellate court were to conclude that it should have considered as relevant conduct only the three unrelated burglaries that were the subject of state court charges, and not the burglaries related to the charges in this case, Mitchell's total sentence would be 180 months, "with 60 months of that sentence to run partially concurrent with any yet-to-be-imposed state court sentence." *Id.* at 51-52. The court also ordered Mitchell to pay $270,577 in restitution. *Id.* at 55.

### C. Mitchell's Direct Appeal

Mitchell appealed his sentence to the Eleventh Circuit Court of Appeals. Doc. 95. He contended:

1) The district court erred by running his 120-month sentence on Count 1 consecutively to the 120-month sentence that ran concurrently on Counts 2 through 7; and

2) The district court erred by running 60 months of his 240-month total sentence concurrently to anticipated terms of imprisonment in

three state court cases, instead of running the entire sentence concurrently to the anticipated state sentences.

Doc. 95 at 2. The Eleventh Circuit concluded "the district court properly considered the underlying state-crime burglaries as part of its analysis of the sentencing factors outlined in 18 U.S.C. § 3553(a)" because "18 U.S.C. § 3661 explicitly places no limit on the information a sentencing judge may consider in imposing a reasonable sentence." *Id.* at 4. The appellate court further found that U.S.S.G. § 5G1.3(c), upon which Mitchell relied, did not apply, and "nothing in the Sentencing Guidelines limits a sentencing judge's common law authority to decide whether to run a sentence concurrently or consecutively, even when a state term of imprisonment is anticipated." *Id.* It thus affirmed his sentence.

## II.    MITCHELL'S § 2255 MOTION

Mitchell raises four (4) grounds for relief in his motion. Doc. 100. First, he claims the district court erred by failing to give equal weight to all sentencing factors. *Id.* at 4. Second, he claims defense counsel was constitutionally ineffective because he did not present medical records that would have shown Mitchell physically could not have committed the burglaries. *Id.* at 5. Third, he claims counsel was ineffective for not advising

him that the three-point reduction for acceptance of responsibility was not binding. *Id.* at 7. Finally, he claims that the Court's sentence was "unreasonably harsh and substantially disparative." *Id.* at 8. As will be discussed below, Grounds One and Four could have been raised on appeal and are procedurally defaulted, and Grounds Two and Three are without merit.

## A. Claims That Were or Could Have Been Raised on Direct Appeal

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *See e.g., Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014). Once a matter has been decided adversely to a defendant on direct appeal, it cannot, except in the case of an intervening change in the law, be re-litigated in a collateral attack under section 2255, as it is procedurally barred. *Seabrooks v. United States*, 32 F.4th 1375, 1383-84 (11th Cir. 2022) (citing *United v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (collecting cases); *Davis v. United States*, 417 U.S. 333, 342 (1974)). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical

grounds may often be proved by different factual allegations … or supported by different legal arguments … or couched in different language … or vary in immaterial respects").

By contrast, a "procedural default" occurs when a defendant attempts to raise a new challenge to his conviction or sentence in a § 2255 motion that could have been raised on appeal. *Seabrooks*, 32 F.4th at 1384 (citing *Lynn*, 365 F.3d at 1234). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)).

Here, Mitchell's first claim, that the district erred by failing to give equal weight to all sentencing factors, and his fourth claim, that the court erred by imposing an "unreasonably harsh and substantially disparative" sentence, could have been raised on appeal and are procedurally defaulted. Mitchell's direct appeal raised two grounds specifically related to the district court's sentencing determination, albeit different than the arguments he now presents. Doc. 95 at 2.

When a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is

excused. *Seabrooks*, 32 F.4th at 1384 (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)). To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice or actual innocence. *Id.*; *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021). The Government can waive the affirmative defense of procedural default. *Seabrooks,* 32 F.4th at 1384 (citing *Foster v. United States*, 996 F.3d 1100, 1106-07 (11th Cir. 2021)). Also, although not relevant here, a movant on collateral review can avoid the procedural default bar altogether "if the alleged error is jurisdictional." *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (citing *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002)).

To establish cause for his default, Mitchell must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim previously." *Lynn*, 365 F.3d at 1234, n.20. A claim of ineffective assistance of counsel can establish cause. *See Nyhuis*, 211 F.3d at 1344. To establish prejudice, he "must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell,* 353 F.3d 880, 892 (11th Cir. 2003). Actual prejudice is more than just the possibility of prejudice; "it requires that the

error worked to the petitioner's actual and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions." *Granda,*

990 F.3d at 1288 (quotation omitted). Mitchell cannot meet this threshold as

to either Ground One or Ground Four.

Mitchell claims in Ground One that the court erred by failing to give

equal weight to all sentencing factors. Doc. 100 at 4. In the supporting facts

he argues the district court did not inquire into his statement, as reflected in

the PSR, that "due to severe injury, participation in offenses U.S. Attorney

claimed items shipped originated from was physically impossible," and had

the court so inquired it would not have inferred his guilt of the related

burglaries and pending State charges, giving rise to the upward variance. *Id.*

As an extension of this argument, in Ground Four, Defendant argues the

court's sentence "was unreasonably harsh and substantially disparative"

because the court "relied on defendants' prior history inaccurately … and

defendant's possession of items allegedly obtained from reported

burglaries," in which Mitchell claims he had no involvement. Doc. 100 at 8.

Each of these issues could have been raised on appeal. Mitchell now

asserts the claims were not raised previously because his appointed appellate

counsel failed to confer with him,[5] which the undersigned liberally

construes as an allegation of ineffective assistance of appellate counsel.

Even accepting this as "cause" for failing to raise these claims of error

previously, Mitchell cannot show prejudice. If Mitchell had raised these

defaulted arguments on appeal, it would not have changed the outcome of

these proceedings. The record reflects counsel objected to the court's

consideration of the burglaries and argued there was insufficient evidence to

support a finding that Mitchell was involved in those burglaries. Also, while

not attributing his "innocence" specifically to a knee injury, Mitchell himself

told the court he was not involved in the burglaries. Despite counsel's

objection and Mitchell's representation, the court determined the

Government established Mitchell's involvement in the burglaries by a

preponderance of the evidence.[6] Doc. 90 at 49.

    At sentencing, the Government has the burden of proving a disputed

---

[5] Page 10 of the form motion to vacate was not included in Mitchell's submission to the court. *See* Doc. 100 at 8-9 (skipping from page 9 to page 11 of the § 2255 form). Page 10 of the form is the page on which Mitchell would have explained why Ground Four was not raised on appeal. The undersigned will assume for the sake of argument that Mitchell's basis for not raising Ground Four is the same as for Ground One, which he relates to appellate counsel's ineffectiveness.

[6] Had this not been proven, the Government might have argued again that the "fence" adjustment applied.

fact merely by a preponderance of the evidence. *United States v. Bolanos Rodriguez,* 853 F. App'x 409, 414 (11th Cir. 2021) (citing *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013)). A sentencing court's factual finding will only be disturbed if it is clearly erroneous, that is if the appellate court, after reviewing all the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (quoting *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir. 2009)). Mitchell has not shown a mistake was made. To the contrary, in affirming the District Court's sentence, the Eleventh Circuit noted: (1) "the district court properly considered the underlying state-crime burglaries as part of its analysis of the sentencing factors" and (2) "18 U.S.C. § 3661 explicitly places no limit on the information a sentencing judge may consider in imposing a reasonable sentence." Doc. 95 at 4.

Moreover, a challenge to the severity of the sentence would also have failed. The district court explained its sentencing decision and specifically spoke to Mitchell about his "criminal history," which was of "dire," "deep concern" to the court. Doc. 90 at 46. This criminal history started when Mitchell was 15, when he committed his first burglary, and included 44

separate convictions for theft- related crimes, 37 of which were burglaries. *Id.* at 48. As the court summarized, "Mr. Mitchell has spent the past … 25 years breaking into other people's homes, businesses, and vehicles, all of which are reflected in the Presentence Report, and stealing their money and property." *Id.* The court explained Mitchell's criminal history points and category (despite being at the highest level) did not take into account "the seriousness of [Mitchell's] criminal conduct or the likelihood that [he] will commit other crimes." *Id.* at 46-47. Because Mitchell was already at the highest criminal history category, the court considered Mitchell's history as a basis for varying from the Guideline range under 3553(a). *Id.* at 47. The court's conclusion was not clearly erroneous.

Therefore, because raising either issue on appeal would not have changed the outcome of the proceedings, Mitchell has not shown cause and prejudice to circumvent his procedural default. Grounds One and Four should be dismissed.

## B. Mitchell's Ineffective Assistance of Counsel Claims

Mitchell raises two claims of ineffective assistance of trial counsel in his motion. In Ground Two, he claims defense counsel was constitutionally ineffective for not presenting medical records that would have disproven the

prosecution's claims regarding his involvement in the burglaries. Doc. 100 at 5. In Ground Three, Mitchell asserts counsel was ineffective for not advising him the three-point reduction for acceptance of responsibility was "non-binding and unimportant at sentencing." *Id.* at 7.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). Thus, as an initial matter, these claims are not procedurally defaulted and are properly before the Court for consideration.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir.

2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, his sentence of imprisonment would have been less. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

1. <u>Failure to Present Medical Records (Ground Two)</u>

In Ground Two, Mitchell claims counsel was ineffective for not introducing medical records related to his knee injury. He asserts such records would have disproven the Government's argument that Mitchell committed not only the offenses for which he was indicted, but also the underlying burglaries and the three additional pending State burglary offenses considered by the court. Mitchell cannot meet the *Strickland* standard as to this medical records claim.

According to the PSR, Mitchell claimed that he was homebound for four months after undergoing surgery on April 14, 2015, and that he was finally able to walk with crutches in February of 2016, thus precluding his commission of any burglaries before that time. Doc. 45, PSR ¶ 96. During Mitchell's allocution at sentencing, where the court stated it was inclined to consider Mitchell's commission of the burglaries in determining an appropriate sentence, Mitchell mentioned an "alternate narrative," insinuating he was not responsible for the burglaries. Doc. 90 at 35. However, Mitchell declined the court's invitation to take the stand to offer an explanation even after the court's candid disclosure that "I've indicated that I am inclined to and have considered these burglaries" and that "this will

impact your sentence … in a significant way." *Id.* at 36. The court allowed

Mitchell an opportunity to confer with defense counsel about taking the

stand to give testimony about his injury, which he declined. *Id.* In his later

statements, Mitchell stated that, "I asked that nobody come to court today or

write any letters because I got myself in this mess. And I know that that

might be pertinent information in some instances, but just nobly I don't think

they should be here." *Id.* at 38.

Although Mitchell now faults his defense counsel for not presenting

medical records to the court, he cannot show deficient performance in this

regard because those records do not come close to proving the level and

duration of incapacity Mitchell claims. The records simply do not establish

Mitchell was physically unable to commit the burglaries.[7]

---

[7] There were 9 burglaries all together. The burglaries associated with offenses in the indictment occurred on or about the following dates:

> Count One—June 26, 2015
> Count Two—July 28, 2015
> Count Three—July 23, 2015
> Count Four—September 8, 2015
> Count Five—January 12, 2016
> Counts Six and Seven—June 30, 2016 (also PSR ¶ 80).

Doc. 45, PSR ¶¶ 12, 15, 18, 21, 24, 27.

One burglary associated with Counts Six and Seven of the indictment was also charged in State court. Doc. 90 at 2, PSR ¶ 80. The pending State burglary offenses that were not

The medical records show Mitchell was diagnosed with a fractured knee on April 2, 2015. Doc. 104-1 at 2-3. Mitchell's knee injury was generally expected to take "4 to 6 weeks to heal," (*id*. at 5), or "4 weeks or longer" to heal (*id.* at 3, 6). One record, which appears to be his post-surgery instructions, states that Mitchel could "ambulate and transfer, but no weight bearing to left leg for 12 weeks per Dr. Brothers." *Id*. at 11. Mitchell received a "Crutch Acces" from Gulf Medical Services on June 10, 2015, and on the same date also ordered a wheelchair for a month. *Id*. at 15, 16. In May and June of 2015, he was doing physical therapy. *Id*. at 17-20. There are otherwise no records for medical visits or treatment after April 18, 2015. Mitchell does not suggest that he had any additional records or evidence to present concerning his condition as of June 26, 2015, when the first of the burglaries at issue was committed.

Defense counsel's decision to omit these medical records from his sentencing arguments does not amount to deficient performance. According

---

directly associated with the indictment occurred on or about:

> PSR ¶ 78—September 2, 2016
> PSR ¶ 79—August 8, 2016
> PSR ¶ 81—August 31, 2016

Doc. 60 at 7- 9.

to defense counsel, the records "could not and would not help him 'dispel concern regarding defendant's participation'" in the pending State burglaries given the 16-month passage of time from the injury to the burglaries. Doc. 103-1 at 2. As counsel notes in his affidavit, the Government had surveillance photographs taken of Mitchell in August and September of 2016 showing he was in fact physically capable of committing the pending State burglaries. Doc. 103-1 at 2.

As to the burglaries underlying the federal indictment, the medical records fall substantially short of supporting Mitchell's claim that he was not physically capable of committing the burglaries on June 26, 2015, July 28, 2015, July 23, 2015, September 8, 2015, January 12, 2016, and June 30, 2016. There are no records to show how Mitchell's recovery progressed and what Mitchell's actual condition on those dates was. At best, the records show that Mitchell was instructed not to bear weight on his left leg for 12 weeks after his surgery on April 14, 2015. The records neither show that Mitchell did not actually start bearing weight on his left leg earlier, nor that he was otherwise unable to get around well enough with a crutch or a cane to commit the first burglary.

The date of the first burglary on June 26, 2015, is approximately 10 weeks after the surgery. Although the date falls 2 weeks short of the 12-week recovery period recommended in the medical records, this is not enough to show that Mitchell physically could not commit this burglary. People sometimes heal faster than expected. People sometimes disregard doctor's orders and begin activity sooner than recommended. Without any additional records showing that Mitchell needed the full 12 weeks, the records provided do not show that Mitchell could not have committed the first burglary.

As to the burglaries in July 2015, September 2015, and June 2016, the records are not only unhelpful to Mitchell, but they are harmful because they contradict his claims about his long recovery. These burglaries occurred at a time when the medical records state Mitchell could resume full weight bearing. The records go against Mitchell's broad claims about the degree and duration of his disability.

Counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (citations omitted). This Court should not "second-guess" that decision. See

*Chandle*r, 218 F.3d at 1314-15 ("We must avoid second-guessing counsel's performance"); *Waters v Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995) ("it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance"). Moreover, "[e]ven if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

The medical records Mitchell argues defense counsel should have presented would not have helped Mitchell because they provided very little information about his injury. The information they did provide contradicted Mitchell's claims about the duration and severity of his injury. Defense counsel was not ineffective for omitting the records. The undersigned concludes that Mitchell has not met his burden of establishing a violation of *Strickland.* Counsel did not perform deficiently by not introducing medical records that did not prove Mitchell's claim that he was physically incapable of committing any of the burglaries at issue. Second, even if the medical records had been submitted, given the lack of information concerning the

duration and severity of disability, the records would not have led the district court to conclude that Mitchell did not commit any of the burglaries. Therefore, he is not entitled to relief.

   2. <u>Advice Regarding Acceptance of Responsibility (Ground Three)</u>

   Mitchell claims in Ground Three that counsel was ineffective for not advising him that the three-point reduction for acceptance of responsibility, which was presented as part of the plea agreement he signed, was "non-binding and unimportant at sentencing." Doc. 100 at 7. Mitchell notes that on June 16, 2017, his attorney presented him with a letter from the Assistant United States Attorney, advising him that he had until June 20 to enter a guilty plea and receive a three-point acceptance of responsibility reduction. *Id.* He signed the plea agreement that same day.

   It is not clear how Mitchell claims to have been prejudiced by counsel's allegedly deficient advice about the three-point reduction. Any claim that his plea agreement was "induced" by this adjustment is defeated by the record. The acceptance of responsibility adjustment was not mentioned in the plea agreement, and in fact the agreement specifically provides that because of the "variety and complexity of issues that may arise at sentencing, the sentence may not be subject to accurate prediction." Doc.

Page 27 of 30

26 at 4. Furthermore, during the plea colloquy Mitchell repeatedly states that he has not been promised a particular sentence. Doc. 86 at 11, 12, 15, 16. He never asserts that he would not have entered a plea of guilty "but for" this alleged inducement, and he does not suggest that he had a viable defense to present at trial. Finally, although the court did not specifically mention the three-level acceptance of responsibility adjustment as factoring into its sentencing decision, historically, a defendant's acceptance of responsibility is not insignificant in cases involving discretionary sentencing decisions.

Mitchell has not met his burden of showing either deficient performance or prejudice under *Strickland*, and he is not entitled to relief.

### III.    CONCLUSION

An evidentiary hearing is not necessary to resolve Mitchell's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). Two of Mitchell's claims are procedurally defaulted because they could have been raised on appeal, and he has failed to meet his burden under *Strickland* as to his ineffective assistance of counsel claims. Therefore, his motion to vacate, set aside, or

correct sentence pursuant to 28 U.S.C. § 2255 should be denied in its entirety.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the District Court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by

either party, that party may bring this argument to the attention of the

District Judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1.    The Motion to Vacate, Set Aside or Correct Sentence (Doc. 100)

be DENIED.

2.    A certificate of appealability be DENIED.

At Gainesville, Florida, on December 20, 2022.

*s/ Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge


**<u>NOTICE TO THE PARTIES</u>**
**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**